UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SQRL HOLDINGS LLC and STANDARD
DEVELOPMENT COMPANY LLC,

              CASE NO. 24-cv-2691

        Plaintiffs,

v.

              **COMPLAINT**

   -against-

PROVENTURE CAPITAL LLC,

        Defendant.
-------------------------------------------------------------------x

      Plaintiffs, SQRL HOLDINGS LLC and STANDARD DEVELOPMENT COMPANY LLC (hereafter referred to collectively as "Borrower" or "Plaintiffs"), by and through their undersigned attorneys, and as and for its Complaint against the Defendant PROVENTURE CAPITAL LLC (hereafter referred to as "Lender" or "Defendant"), allege as follow:

### Nature of the Case

      1.    This action arises from a usurious loan which Defendant made to Plaintiffs, charging exorbitant interest rates and origination fees, in violation of applicable usury laws, using misleading and oppressive sales techniques.

### Jurisdiction and Venue

      2.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as it is a suit between citizen of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), because the Defendant is considered to reside in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Parties

3. Plaintiff SQRL Holdings LLC is a Florida limited liability company with its principal place of business in Boca Raton, Florida, and is a citizen of the State of Florida for purposes of determining diversity jurisdiction.

4. Plaintiff Standard Development Company LLC is an Arkansas limited liability company, with its principal place of business in Arkansas, and is a citizen of the State of Florida for purposes of determining diversity jurisdiction.

5. Defendant Proventure Capital LLC is a Connecticut limited liability company, which, on information and belief, has its principal place of business in Brooklyn, New York, and whose member resides in Nassau County, New York, and is a citizen of New York for purposes of determining diversity jurisdiction.

## General Allegations

6. Defendant styles its transactions as a "merchant agreement" for the "purchase" of Plaintiffs' receipts, as a ruse in order to attempt to avoid the maximum interest rate and other legal protections and requirements that exist for loans. But in fact, the transaction was nothing more than a disguised loan, which functions as a loan, and as a result, Plaintiffs were entitled to the protections afforded to borrowers under applicable state law.

7. Defendant loaned money to Plaintiffs as a so-called "Merchant Agreement." The agreement was in fact a fraudulent usurious loan with an interest rates exceeding the maximum rate permissible for a loan under applicable law.

8. Connecticut law guarantees certain protections to loan borrowers, including a maximum annual interest rate. Under Connecticut law, the maximum annual interest rate is 12%.

The law also imposes certain regulations on loan issuers, including the requirement of specialized licenses and regular oversight by governmental entities.

9. Despite the form of the agreement, no sale of receipts ever took place and the form was merely a sham to evade appliable usury laws. In reality, the transaction was a loan that charged interest rates that exceeded the maximum permitted under the appliable usury laws.

10. Defendant markets and collects upon these "purchase of future receivables agreements" as loans. It required Plaintiffs to repay the loan through daily payments, which were debited from Plaintiffs' bank accounts each day or each week at amounts pre-set by Defendant. The weekly payment was not grounded on any good faith estimate of monies the Plaintiffs regularly received from customers on their accounts receivables. These periodic payments resulted in the loan being repaid on short terms at annual interest rates well above the threshold that defines usury under state law.

11. Like other companies in this industry, Defendant preys on companies like Plaintiffs which are in urgent need for cash. The loans are unregulated and predatory in nature, because Defendant charges usurious rates and receives a large portion of its revenues from the "origination" fees rather than from the performance of the loan. In its own advertising materials including its website, Defendant markets itself as providing "an alternative to traditional bank loans which are often difficult to secure and take a long time" by providing "fast access to working capital at competitive rates with easy, convenient repayment programs."

12. The reconciliation provisions in the Loan provided an illusory method for reduction in the payments, and the entire arrangement was a sham, because, among other things:

a. The mandated daily payment amount was completely arbitrary, fixed by Defendant, without any good faith basis on the monies that the Plaintiffs were actually reasonably expected to

3

receive based on an examination of the historical and projected customer payments on accounts receivable, but rather, were fixed by Defendant based primarily on the amount of disguised interest which the Defendant wanted to receive, and the maximum amount the Defendant felt it could extract from Plaintiffs in light of the Plaintiffs' economic duress.

      b.      The Defendant was authorized to collect a judgment against the Plaintiffs and the guarantor individually for the full amount of the repayment amount in the event of the Plaintiffs' default. These events of default, included, among other things, the violation of the promise to ensure that sufficient funds to cover the required daily payment remained in Plaintiffs' bank account and were available for debit, the failure to pay the Defendant's fees, and the taking out of any other cash advances or loan products from any party other than Defendant.

      c.      Because Defendant was not required to complete any requested reconciliation within any particular time period, and because Plaintiffs were not allowed to request a reconciliation more frequently than once every two calendar weeks, and because the payments were required daily, if the payments from customers decreased substantially, Plaintiffs would simply be unable to make the daily payments and would automatically be in default, resulting in the full agreed repayment amount to be due and payable in full, well before any reconciliation could be completed or the payment amount adjusted.

      d.      The entire arrangement was a sham because Defendant knew that, at any moment, it could declare a default and call for the full amount of the agreed repayment amount to be paid in full, because Defendant knew full well that Plaintiffs were in default at the moment they signed each loan agreement. As Defendant well knew, prior to entering into this Loan, Plaintiffs had already obtained another loan and given another lender a lien on its receipts, and that, simultaneously with the Loan, Plaintiffs were obtaining another loan from another company

4

introduced to Plaintiffs by Defendant that worked together with Defendant, and that loan agreement gave the other lender a lien on the Plaintiffs' accounts receivables. Defendant also knew that its loan agreement contained an "anti-stacking" provision, which specifically prohibited Plaintiffs from granting any other company a security interest in its accounts receivables or obtaining any other merchant cash advances. As a result, Defendant knew that from day one that Plaintiffs were in default on the loan from the moment Plaintiffs entered into the loan agreement, and that Defendant could declare a default and call for the full amount of the agreed repayment amount to be paid in full. As such, Defendant knew that it was not taking any risk whatsoever associated with any decrease in the flow of monies from customers because Defendant knew that it could declare a default at any time based on the violation of the anti-stacking provision, regardless of the customer revenue stream.

13. In a true factoring agreement, the factor purchases an identified set of accounts receivable, and takes the risk that these identified customers do not pay their bills. The "purchase price" is calculated based upon the assessment of the value or collectability of the merchant's receivables. Here, the "purchase price," the repayment amount, and the schedule and amount of loan repayments, were unilaterally dictated by the Defendant based upon the interest rate it wanted to be paid.

14. In a true factoring agreement, if a merchant receives a lower amount of payments from customers, the factor would automatically only receive the percentage of monies that actually come in. .

15. In the merchant cash advance agreement like the one at issue in this case, there are no specified or identified receivables. The Defendant is not taking any risk associated with the failure of the customers to make payments, because it can declare a default and obtain a judgment

against the Plaintiffs and the guarantor for the full amount of the agreed repayment. amount, even if the company's revenues drop or it stops doing business because it becomes unprofitable for reasons that might not have any relation to the level of customer payments.

16. In recent years, state and federal courts have found that similar merchant cash advance agreements, like the ones which are the subject of this lawsuit, are nothing more than disguised illegal usurious loans. *See, e.g, Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023); *S&M Indus., LLC v. Advantage Platform Servs., Inc.*, 80 Misc. 3d 1203(A), 194 N.Y.S.3d 464 (N.Y. Sup. Ct. 2023); *Haymount Urgent Care PC v. Gofund Advance, LLC*, 609 F.Supp.3d 237 (S.D.N.Y. 2022); *AKF, Inc. v. W. Foot & Ankle Ctr.,* 632 F.Supp.3d 66, 79 (E.D.N.Y. 2022); *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F.Supp.3d 402, 418–19 (S.D.N.Y. 2022); *Lateral Recovery LLC v. Queen Funding, LLC*, 2022 WL 2829913, at *6 (S.D.N.Y. July 20, 2022); *Davis v. Richmond Cap. Grp., LLC*, 194 A.D.3d 516, 150 N.Y.S.3d 2 (1st Dept. 2021); *Adar Bays, LLC v. GeneSYS ID, Inc*., 37 N.Y.3d 320, 334 (2021); *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.,* 374 F.Supp.3d 361, 367 (E.D. Pa. 2019) (upholding usury and RICO claim against merchant cash lender under Texas law); *US Connect, LLC v. Capital Solutions Bancorp LLC,* 2013 WL 4401840 (M.D. Fla. 2013) (upholding usury and deceptive trade practice claims against merchant cash lender under Florida law).

**March 2024 Loan Agreement**

17. On about March 4, 2024, Plaintiffs entered into a purported "Merchant Agreement" with Defendant ("Loan").

18. Under the terms of the Loan, Defendant agreed to loan Plaintiffs $1,000,000, minus the balance owed to another lender believed to be affiliated with Defendant in the amount of $344,500, minus other fees, and only loaned a net amount of $531,000.

19. In return, Plaintiffs agreed to repay Defendant the sum of $1,499,000, to be paid in payments of $29,980 every business day, over the course of a period of ten weeks (50 business days or 70 calendar days).

20. As such, Defendant was to receive $1,499,000 over a period of 70 days, on the $1,000,000 which it loaned, resulting in an interest payment of $499,000 over this short period, or an annual interest rate of more than 260%.

21. To date, Plaintiffs paid Defendant ten payments of $29,980, for a total of $299,800.

## COUNT I
(Usury – Connecticut Law)

22. Plaintiffs repeat and reallege the general allegations as if fully set forth herein.

23. Connecticut law provides that no person or corporation shall 'directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum' (Conn.Gen.Stat. § 37-4); that no person or corporation shall 'charge a borrower with any expense of inquiry as to his financial responsibility or expense of negotiating a loan . . . unless the total of such charges and of the interest agreed upon is, during any one year, twelve per cent of the loan or less,' (Conn.Gen.Stat. § 37-6); and that 'no action shall be brought to recover principal or interest, or any part thereof', on any loan so prohibited, 'or upon any cause arising from the negotiation of such loan,' (Conn.Gen.Stat. § 37-8).

24. Lender did charge, demand, accept and make an agreement to receive interest from Borrower at a greater rate than twelve per cent per annum, and charged Borrower with expenses even though the charges and interest agreed upon was more than twelve per cent per annum.

25. Lender acted with specific, unlawful, usurious intent, in that it intended to exact a payment beyond the statutory limit.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against the Defendant for:

A) A declaration that the Loan was usurious, void and unenforceable, and that the guarantees are by extension void and unenforceable;

B) Cancellation of any UCC liens filed by Defendant against the collateral of the Plaintiffs;

C) A money judgment for the monies paid by Borrower, including but not limited to the principal and interest;

D) Injunctive relief to enjoin Defendant from taking any action to enforce or collect upon the Loan or the guarantee;

E) Prejudgment interest, costs, and attorneys fees; and

F) Such further relief as the Court may deem just and proper.

## COUNT II
(Connecticut Unfair Trade Practices Act)

26. Plaintiffs repeat and reallege the general allegations as if fully set forth herein.

27. The Connecticut Unfair Trade Practices Act makes ("CUTPA") it unlawful for a business to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. C.G.S.A. § 42-110b.

28. In determining whether a practice violates CUTPA, a court may examine the extent to which 1) the practice, without necessarily having been previously considered unlawful, offends public policy; 2) whether the practice is immoral, unethical, oppressive, or unscrupulous; or 3) whether it causes substantial injury to consumers or businesses. A party need not prove an intent to deceive, defraud or to mislead, to prevail under CUTPA. It is not necessary to find all three factors, and any one criteria present to a great extent might demonstrate an unfair practice. The

expansive nature of the statute provides a remedy for a wider range of business conduct than does the common law, and a CUTPA claim may exist wholly independent of any common law claim.

29. A party prevailing in a CUTPA action shall be entitled to declaratory, injunctive and other equitable relief, monetary relief, punitive damages, and attorney's fees and costs. C.G.S.A. § 42-110g.

30. Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of CUTPA, by, among other things, employing misleading and oppressive tactics to induce Plaintiffs and other financially distressed businesses to enter into usurious loans with exorbitant interest rates and fees, and by making and entering into such loans with Plaintiffs and other such businesses.

31. Plaintiffs suffered substantial damages from the Defendant's practices, that was not outweighed by the benefits of the practices.

32. Punitive damages should be assessed against Defendant because the Defendant acted with a reckless indifference to the rights of others or an intentional and wanton violation of those rights.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against the Defendant for:

A) A declaration that the Loan is usurious, void and unenforceable, and that the guarantee is by extension void and unenforceable;

B) Cancellation of any UCC liens filed by Defendant against the collateral of the Plaintiffs;

C) A money judgment for the monies paid by Borrower, including but not limited to the principal and interest;

    D)    Injunctive relief to enjoin Defendant from taking any action to enforce or collect upon the Loan or the guarantee;

    E)    Punitive damages to punish and deter future similar conduct;

    F)    Prejudgment interest, costs, and attorneys fees under C.G.S.A. § 42-110g; and

    G)    Such further relief as the Court may deem just and proper.

## COUNT III
(Unjust Enrichment)

33.    Plaintiffs repeat and reallege the general allegations as if fully set forth herein.

34.    A party is entitled to recovery for unjust enrichment where the defendant benefitted from the transaction or has received something of value, and the benefit was unjust, to the detriment of the plaintiff. The right of recovery is essentially equitable, its basis being that in a given situation it is contrary to equity to and good conscience for one to retain a benefit which has come to him at the expense of another.

35.    Plaintiffs are entitled to recovery for unjust enrichment against the Defendant, because Defendant benefitted from the Loan, and the benefit was unjust, to the detriment of Plaintiffs, and it is contrary to equity and good conscience for Defendant to retain this benefit.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against the Defendant for:

    A)    A money judgment for the monies paid by Borrower to Defendant;

    B)    Prejudgment interest and costs; and

    C)    Such further relief as the Court may deem just and proper.

## COUNT IV
(Breach of Contract)

36.    Plaintiffs repeat and reallege the general allegations as if fully set forth herein.

37. Defendant entered into the loan agreement with Plaintiffs under which it agreed to loan Plaintiffs specific sums of money at agreed times.

38. Defendant breached the Loan by, among other things, not loaning the full amount which it agreed to loan.

39. Defendant's breach of the Loan caused damages to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against the Defendant for:

A) A money judgment for the amount by which Plaintiffs were damaged;.

B) Prejudgment interest and costs; and

C) Such further relief as the Court may deem just and proper.


Dated: New York, New York
April 10, 2024

WUERSCH & GERING

By: /s/David T. Azrin
    David T. Azrin

100 Wall Street, 10th Floor
New York, New York 10005
(212) 505-5050
david.azrin@wg-law.com

Attorneys for Plaintiffs